UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMIE RAYE BARNHILL,

     Plaintiff,

v.                     CASE No. 8:06-CV-922-T-23TGW

M.D. DANIEL CHEERY, III,[1]
M.D. LONG NGOC DO,

     Defendants.

---

## REPORT AND RECOMMENDATION

     The plaintiff, who is biologically male, has been diagnosed as a transsexual.[2]   He alleges that the defendants have violated the Eighth Amendment's prohibition against cruel and unusual punishment by refusing to prescribe him female hormones to treat his transsexualism (Doc. 1, p. 7).

---

[1] The correct spelling of this defendant's name is Daniel Cherry. III. He will be referred to using the correct spelling of his name throughout the remainder of this document.

[2] A transsexual is one who has "'[a] rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex.' and who typically seeks medical treatment. including hormonal therapy and surgery. to bring about a permanent sex change." Farmer v. Brennan, 511 U.S. 825. 829 (1994) (quoting American Medical Association, Encyclopedia of Medicine 1006 (1989). The evidence refers interchangeably to the plaintiff being a "transsexual" or having a "gender identity disorder."  For consistency. this report and recommendation refers to the plaintiff's diagnosis as transsexualism.

He seeks money damages and a court order directing the defendants to give him female hormones. He also seeks permission to wear cosmetics and grow his hair in accordance with the rules governing female inmates.

The defendants have moved on multiple grounds for summary judgment on the plaintiff's claim (Doc. 43). Because the plaintiff has already unsuccessfully litigated the issue of whether the prison's refusal to prescribe female hormones for transsexualism violates the Eighth Amendment to the Constitution, this claim is barred under the doctrine of collateral estoppel. Furthermore, the defendants are entitled to summary judgment on the merits of this claim because the plaintiff is receiving mental health counseling for transsexualism and he is not entitled under the Constitution to his preferred method of treatment. I therefore recommend that the defendants' Amended Motion for Summary Judgment (id.) be granted, and the case be dismissed.[3]

---

[3]The plaintiff also seeks summary judgment on the basis of qualified immunity. As discussed below, this is also a meritorious basis for the dismissal of the plaintiff's claim for monetary damages. Moreover, the plaintiff's request to be governed by the female inmate rules for wearing cosmetics and hair length is barred for failure to exhaust administrative remedies.

I.

The plaintiff is an inmate at Polk Correctional Institution ("PCI")

in Polk City, Florida, which is a state prison within the Florida Department

of Corrections ("FDOC") (Doc. 1). In April 2003 he began serving a ten-year

prison sentence for attempted sexual battery on a victim under twelve years

of age.[4] See www.dc.state.fl.us/Activeinmates.

The defendants are Dr. Daniel Cherry, III, the former executive

regional medical director for the FDOC, and Dr. Long Ngoc Do, chief health

officer for PCI.[5]  Both defendants have played a role in determining the

plaintiff's medical treatment during his incarceration.

The plaintiff has been diagnosed as a transsexual, and he

characterizes himself as a "pre operative male to female transsexual" (Doc.

1-2, Ex. C). The plaintiff asserts that he has been "prescribed estrogen since

---

[4]In order to avoid confusion, the plaintiff will be referred to as "he," because he is
biologically male and is identified as a male by the Department of Corrections. See
www.dc.state.fl.us/Activeinmates.

[5]A telephone call to the FDOC's office of the director of health services indicated
that Dr. Cherry is presently the chief health officer for the Apalachee Correctional
Institution in Marianna, Florida.

1986" for transsexualism and he has "lived exclusively as a woman since 1988"[6] (Doc. 1, p. 8).

However, when the plaintiff was taken into FDOC's custody on April 2, 2003, his female hormone treatments ceased. The plaintiff has actively sought a prescription for female hormones since the commencement of this incarceration, but his treating physicians have rejected this request (see Doc. 1-2, Exs. A-J; Doc. 33-2). The plaintiff claims that, as a result of the withdrawal of estrogen, he has lost feminine attributes and suffered numerous side effects, including hot flashes, nausea, headaches and painful erections (Doc. 1, p. 12).

After being processed at the North Florida Reception Center, the plaintiff was housed in Washington Correctional Institution ("WCI"), where he was assigned primary care physician Dr. John Cinugu (id. at p. 10). The plaintiff states that he explained to Dr. Cinugu that he is a transsexual who is experiencing side effects of estrogen withdrawal (id. at pp. 10, 12). The plaintiff's request for estrogen was presented to Dr. Janice Spann, then chief

---

[6]It is noted that the plaintiff's female hormone regimen was interrupted at least once during this time period when he was previously incarcerated on other charges (see Doc. 29, pp. 2-3; Doc. 30).

health officer at WCI, who, after reviewing the plaintiff's medical records and Dr. Cinugu's notes, denied the request (Doc. 1-2, Exs. B, C).  The plaintiff appealed Dr. Spann's denial of female hormones to the Secretary of the FDOC (id. at Ex. D).  After reviewing the plaintiff's records, the Secretary's representative on October 2, 2003, affirmed Dr. Spann's determination (id.).

On March 11, 2004, the plaintiff grieved a lack of "any treatment" for his transsexualism (id. at Ex. E).  It was alleged that Dr. Cherry responded that it was not necessary to address his gender identity issue (id.).  However, as the plaintiff acknowledges, Dr. Cherry directed that he receive treatment from mental health services (see id. at Ex. F).

In a grievance dated April 21, 2005, the plaintiff complained to senior psychologist M. Tyll that mental health treatment is not appropriate for his transsexualism (id.).  Dr. Tyll responded that "medical ... view[s] this as a mental health concern" (id.).

Dr. Tyll also stated that Dr. Cherry told him that the FDOC "follows some [Bureau of Prisons] Guidelines, 'which recommend that estrogen therapy will continue if inmates arrive on estrogen[,]' [but the plaintiff] had been off estrogen for about 18 months before [the FDOC]

-5-

received him from county jail" (id.). However, the plaintiff was receiving

female hormones while in the county jail prior to his incarceration with the

FDOC (see id. at Ex. G). Although the plaintiff brought this error to the

attention of the FDOC, his treatment regimen has not changed.

In the fall of 2005, the plaintiff was transferred to PCI. Dr. Do

is PCI's chief health officer. The plaintiff states that he met with Dr. Do on

October 25, 2005, and informed him that he is a transsexual and again

requested estrogen (Doc. 1, p. 15; Doc. 1-2, Ex. H). Dr. Do denied the

request (id.).

The plaintiff filed a grievance concerning Dr. Do's denial of

estrogen, to which Dr. Do responded that "[i]t has been a long standing policy

of the Department of Corrections that inmates will not be given Estrogen for

the purpose of gender re-assignment" (Doc. 1-2, Ex. H, p. 16). The plaintiff

appealed this decision to the Secretary of the FDOC, arguing that, because he

arrived at FDOC on female hormones, the FDOC is obligated to continue

prescribing female hormones (id. at Ex. I). The appeal was rejected, and the

plaintiff was encouraged to follow the treatment regimen prescribed for him

(id.). In this regard, the plaintiff "has been receiving treatment in the form of

counseling for his gender identity disorder" since he entered FDOC's custody (Doc. 43-15, Ex. N, ¶10; <u>see also</u> Doc. 43-16, Ex. O, ¶¶ 6, 7).

In March 2006, the plaintiff again grieved the denial of female hormones, asking the prison warden to identify the "[t]echnical [i]nstruction that governs this issue" (Doc. 1-2, Ex. J). Dr. Do responded that there is no "technical instruction" regarding the use of estrogen in male inmates, and that its use is considered on a case-by-case basis (<u>id.</u>).

The plaintiff asserts that, in April and May 2006, "a mental health treatment team was organized to evaluate [him] for the express purpose of Estrogen being reinstated" (Doc. 33, p. 1). The plaintiff states that he was evaluated by two psychiatrists, Drs. Castro and Abbas (<u>id.</u> at pp. 2-3). Documentation indicates that Dr. Castro opined that "it would be beneficial to [the plaintiff] to prescribe estrogen," and that Dr. Abbas said that "MH [mental health] recommended that [the plaintiff] should receive hormonal therapy for psychological stress" (Doc. 46-2, Ex. A, p. 2). Dr. Do stated that a psychiatrist's recommendation to prescribe female hormones "was elevated to [the] Office of Health Services in Region 3 and Tallahassee on August 25, 2006, and the recommendation was not approved" (Doc. 33-2, p. 2). Instead,

-7-

the plaintiff was "referred to Mental Health for management of depression and anxiety" (id.).

In this connection, Dr. Paul Roberts, a FDOC psychiatric consultant who has twenty-one years of medical experience and who has conducted a psychiatric evaluation of the plaintiff, opined that the plaintiff can be treated adequately with mental health services (Doc. 43-16, Ex. O, ¶¶ 1, 2, 9, 12). He stated further that the plaintiff's "mental status and adaptive functioning appear[] to be adequate..." (id. at ¶9). In particular, Dr. Roberts noted that the plaintiff's mental health record "does not show any attempts at suicide, castration, or other self mutilation since his most recent incarceration with Department of Corrections which began on April 2, 2003" (id. at ¶10).

With regard to the plaintiff's physical health, Dr. Do, a medical doctor with twenty-six years of experience, has averred that "[i]t is unreasonable to believe that [the plaintiff] is currently suffering any physical withdrawal symptoms as a result of his not being prescribed female hormones" because"[t]he physical effects of exogenous estrogen or other female hormones do not reside in the system for years" (Doc. 43-15, Ex. N,

¶6). Further, Dr. Do noted that the plaintiff "has not needed any physical treatment such as surgery or other physical operation as a result of not being prescribed female hormones" (id. at ¶7).

The plaintiff filed this lawsuit on May 16, 2006, against Drs. Cherry and Do contending that the defendants' refusal to prescribe him female hormones for transsexualism violates the Eighth Amendment's prohibition against cruel and unusual punishment (Doc. 1, p. 7). Specifically, the plaintiff alleges that the lack of female hormones has "wreak[ed] havoc on [his] physical and emotional state" and the defendants have failed to offer him "any treatment" for this serious medical need (id.).

The plaintiff seeks an injunction ordering the defendants to (1) provide him with hormone therapy, (2) arrange for a consultation with a specialist in gender identity disorders, and (3) allow him to grow his hair and use cosmetics as female inmates are permitted to do (id. at pp. 19-20). He also seeks an award of money damages against Drs. Cherry and Do in their individual capacities, as well as attorney's fees and expenses (id. at p. 19).

The plaintiff has previously filed at least two other unsuccessful lawsuits seeking to compel prison officials to provide him with female

hormones. Thus, in 2003 the plaintiff filed in the United States District Court for the Northern District of Florida a lawsuit against several prison officials, including defendant Dr. Cherry, claiming that their refusal to prescribe estrogen for his transsexualism violated the Eighth Amendment to the Constitution (Doc. 43-3, Ex. B)( Barnhill v. Crosby, et. al., Case No. 03-CV-296 ("Northern District lawsuit")). On August 6, 2004, Magistrate Judge Elizabeth M. Timothy recommended that the plaintiff's second amended complaint be dismissed because the plaintiff was admittedly receiving psychotherapy for his transsexualism, and the plaintiff failed to show that this treatment was so inadequate that it stated a constitutional violation (Doc. 43-4, Ex. C, p. 9). That recommendation was adopted by Senior District Judge Maurice M. Paul, who noted that, "while [the] plaintiff may strongly disagree with the course of medical treatment prescribed by [the] prison physicians, []he is not likely to succeed on the merits of proving that the treatment amounted to cruel and unusual punishment" (Doc. 43-6, Ex. E).[7]

---

[7]The plaintiff appealed this decision, but the appeal was dismissed for failure to prosecute (Doc. 43-7, Ex. F; Doc. 43-9, Ex. H).

On July 18, 2005, the plaintiff filed a state court challenge to the prison's refusal to prescribe female hormones for transsexualism, alleging that it violated the Eighth Amendment (Doc. 43-10, Ex. I). Thus, in a Petition for a Writ of Mandamus filed in Leon County Circuit Court, the plaintiff sought a court order directing FDOC to give him female hormones (Barnhill v. FDOC, et al., 2005 CA 1724 ("state court lawsuit")). In an Order dated October 4, 2006, Circuit Judge Janet E. Ferris denied the plaintiff's Petition for Writ of Mandamus, finding that "[t]he record shows that the petitioner is receiving some form of treatment for his condition of gender dysphoria. Nothing in the department's rules gives an inmate a clear legal right to the treatment of his choice, nor does an inmate's disagreement with a physician over the proper course of medical treatment rise to the level of a constitutional violation" (Doc. 43-14, Ex. M).

The defendants in this case have moved for summary judgment (Doc. 43).[8] They contend that this lawsuit is barred under the doctrines of res judicata and collateral estoppel because it merely restates the same

---

[8]This is an amended motion for summary judgment which the defendants have received leave of court to file (Doc. 40).

unsuccessful claim asserted by the plaintiff in the Northern District and state court lawsuits. Alternatively, the defendants argue that they are entitled to judgment as a matter of law because the plaintiff is receiving treatment for transsexualism, and the denial of his preferred mode of treatment does not state a constitutional violation. Further, the defendants contend that they are entitled to qualified immunity. Finally, the defendants argue that the plaintiff's request for permission to wear cosmetics and grow his hair as a female inmate should be dismissed for failure to exhaust administrative remedies.

The plaintiff has filed a memorandum in opposition to the motion (Doc. 46). He alleges that res judicata is not applicable because his claim was not fully litigated in the previous lawsuits and he has new evidence. The plaintiff also contends that he has stated a cognizable claim because there is legal authority which purportedly establishes that it is a constitutional violation to discontinue a transsexual inmate's female hormone therapy.

II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56 (c). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at

trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

### III.

The defendants argue first that the plaintiff's claims are barred by res judicata and collateral estoppel because this lawsuit merely reiterates

the unsuccessful claim asserted by the plaintiff in the Northern District and
state court lawsuits (Doc. 43, pp. 8-11).  The argument has merit insofar as
it is based on collateral estoppel.

Res judicata, also known as claim preclusion, bars a subsequent
claim when a final judgment has been entered on the merits of the same cause
of action in a prior lawsuit between the parties.  New Hampshire v. Maine,
532 U.S. 742, 748 (2001).  Thus, "a party who has had one fair and full
opportunity to prove  a claim and has failed in that effort[] should not be
permitted to go to trial on the merits of that claim a second time."  Blonder-
Tongue Labs., Inc. v. University of Illinois Foundation, 402 U.S. 313, 324-25
(1970)(citation omitted).

Collateral estoppel, which is also referred to as issue preclusion,
more narrowly forecloses litigation of an issue of fact or law that has been
previously decided.  New Hampshire v. Maine, supra, 532 U.S. at 748-49;
Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).
The Supreme Court has explained that "res judicata and collateral estoppel
relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." <u>Allen</u> v. <u>McCurry</u>, 449 U.S. 90, 94 (1980).

Res judicata has four elements: (1) there is a final judgment on the merits of the first action; (2) the first decision is rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, are identical; and (4) the causes of action in both suits are identical. <u>Richardson</u> v. <u>Alabama State Bd. of Educ.</u>, 935 F.2d 1240, 1244 (11th Cir. 1991).

Although the Northern District lawsuit presented the same claim that is alleged here, res judicata is not applicable because the defendants have not established identity of parties, which is an essential element of res judicata. <u>See</u> <u>id</u>.

The plaintiff sued Drs. Cherry, Janice Spann, and Jan Salzburg in the Northern District lawsuit (Doc. 1, pp. 18, 19). This lawsuit names as defendants Drs. Cherry and Do (<u>id</u>. at p. 1). Thus, Dr. Do was not a party to the Northern District lawsuit, and he has not argued that he is in privity with a defendant in the Northern District lawsuit.

Moreover, although Dr. Cherry was a defendant in the Northern District lawsuit, and therefore seems to be entitled to the benefit of res judicata, the plaintiff's <u>pro se</u> pleadings create a lack of clarity concerning whether he was sued in the same capacity in both cases. This is an important consideration because neither identity nor privity exists when a party is sued in his official capacity, and then sued later in his individual capacity. <u>See</u> <u>Headley</u> v. <u>Bacon</u>, 828 F.2d 1272, 1279 (8th Cir. 1987)("litigation involving officials in their official capacity does not preclude relitigation in their personal capacity"); 18A Wright, Miller & Cooper, <u>Federal Practice and Procedure</u>, §4458, pp. 571-72 (1981). In light of this uncertainty, as well as the fact that res judicata does not apply to Dr. Do, it is appropriate to pretermit any further discussion of res judicata and move on to collateral estoppel.

"Collateral estoppel, unlike res judicata, is not limited to parties and their privies." <u>Hart</u> v. <u>Yamaha-Parts Distributors, Inc.</u>, 787 F.2d 1468, 1473 (11th Cir. 1986). Thus, collateral estoppel is applicable when (1) the issue at stake is identical to the one alleged in the prior litigation, (2) the issue was actually litigated in the prior litigation, (3) the determination of the issue

-17-

in the prior litigation was a critical and necessary part of the judgment in the earlier action, and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. Id.

As indicated, identity of parties or their privies is not necessary to invoke collateral estoppel under federal law. Id. Thus, collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329 (1979)(citation omitted). Consequently, collateral estoppel is not foreclosed here because Dr. Do was not a party to the Northern District lawsuit or because of the possibility that Dr. Cherry was sued in different capacities in the two suits.

The first element of collateral estoppel is that the issue at stake must be identical to the one alleged in the prior litigation. Hart v. Yamaha-Parts Distributors, Inc., supra. In this lawsuit and the Northern District lawsuit the plaintiff's sole claim is exactly the same: He alleges that the prison's refusal to prescribe him female hormones for transsexualism is a violation of the Eighth Amendment's prohibition against cruel and unusual

punishment (compare Doc. 1, p. 7, ¶VI with Doc. 43-3, Ex. B, p. 8). Both lawsuits present the same cause of action, the same legal issues, and a common nucleus of facts. Moreover, in both cases the primary relief sought is an order directing the prison officials to prescribe the plaintiff female hormones (id.). Therefore, the first element of collateral estoppel is unquestionably satisfied.

The second and third elements of collateral estoppel require a showing that the issue at stake was litigated in the prior lawsuit and that the court's determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. Hart v. Yamaha-Parts Distributors, Inc., supra. Those two requirements have also been met.

The issue of whether the prison's refusal to provide the plaintiff female hormones for transsexualism constitutes an Eighth Amendment violation was fully litigated in the Northern District lawsuit. Thus, the plaintiff made his claim the subject of three complaints, a motion for preliminary injunction, objections to reports and recommendations, and two motions for reconsideration (see case docket 5:03-CV-296, Docs. 1, 7, 8, 11, 12, 16, 18, 31). Further, Magistrate Judge Timothy wrote a detailed report

and recommendation applying the alleged facts to the law, and the district court adopted the report and recommendation (Doc. 43-4, Ex. C). In essence, the Northern District court held that the plaintiff did not state an Eighth Amendment violation because he is receiving mental health treatment for transsexualism and he is not entitled under the Constitution to the treatment of his choice (id.).

Moreover, the court's determination of this issue was a critical and necessary part of the court's judgment. Contrary to the plaintiff's assertion, a judgment was entered dismissing the case with prejudice (Doc. 46, Ex. E). Furthermore, the preclusive effect of the judgment was not lessened because the dismissal was for a failure to state a claim. A dismissal for failure to state a claim is a judgment on the merits. State of Alabama ex rel. Siegelman v. U.S. Environmental Protection Agency, 911 F.2d 499, 503 n. 10 (11th Cir. 1990); see also Harmon v. Webster, 2008 WL 269012 at *1 (11th Cir. 2008)(unpub. dec.).

The plaintiff argues that the Northern District lawsuit has no preclusive effect because the physical pain he experienced as a result of estrogen withdrawal was not litigated and "the court did not distinguish

-20-

between failing to provide estrogen ... and discontinuing a previously prescribed treatment" (Doc. 46, p. 3; see also id. at pp. 6, 7). These contentions are merely an attempt to re-argue the merits of the Northern District court's decision.

The plaintiff's contentions of physical pain and estrogen use prior to his incarceration were considered, and accepted as true, in the Northern District court (see Doc. 43-4, Ex. C, pp. 1-3). However, the Northern District court determined that these circumstances do not establish that the plaintiff's treatment regimen is constitutionally infirm (id. at pp. 7-9). The plaintiff's disagreement with this determination does not state a legal basis for defeating application of collateral estoppel. See 18A Wright, Miller & Cooper, Federal Practice and Procedure, §4465.2, p. 773-74 ("Preclusion cannot be defeated simply by arguing that the prior judgment was wrong .... [t]he purpose of preclusion is found to be protection against such arguments"). The plaintiff decided not to pursue the appeal of the Northern District's decision (Doc. 43-9, Ex. H) and therefore lost the right to challenge the correctness of that decision.

The last requirement of collateral estoppel is that the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. Hart v. Yamaha-Parts Distributors, Inc., supra. In this regard, the plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." Blonder-Tongue Labs., Inc. v. University of Illinois Foundation, supra, 402 U.S. at 333 (quotations and citation omitted). Factors considered in making this determination include whether the party against whom estoppel is asserted initiated the previous lawsuit, if there was an incentive to litigate vigorously, if there was extensive litigation, and if the later action was foreseeable. Johnson v. U.S., 576 F.2d 606, 614-15 (5th Cir. 1978), cert. denied, 451 U.S. 1018 (1981).

As indicated, the plaintiff fully litigated his claim in the Northern District lawsuit. Furthermore, the plaintiff had at least as great an incentive to litigate vigorously in the Northern District lawsuit as he does here. Moreover, the plaintiff has not identified any procedural irregularities in the Northern District lawsuit which would render preclusion unfair.

Instead, the plaintiff disputes the applicability of collateral estoppel on the basis of new evidence (Doc. 46, p. 8). In this connection, the plaintiff has filed copies of recent grievances concerning the prison's refusal to prescribe estrogen (id. at p. 6). Further, he states that there are new recommendations from psychiatrists that he should receive estrogen and evidence that the defendants "falsified documents" relevant to his treatment (id. at pp. 6-9).

The submission of new evidence does not automatically render preclusion inappropriate. See Blonder-Tongue Labs., Inc. v. University of Illinois Foundation, supra. Rather, the new evidence must be "crucial to a proper resolution in the first tribunal." Kaiser Ind. Corp. v. Jones & Laughlin Steel Corp., 515 F.2d 964, 982 (3rd Cir. 1975), cert. denied, 423 U.S. 876 (1975); 18A Wright, Miller & Cooper, Federal Practice and Procedure, §4465.2, p. 778 (the additional evidence must "have an important bearing on the issue"). Cumulative evidence is not crucial evidence. Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 474 F.2d 798, 808-09 (4th Cir. 1973), cert. denied, 414 U.S. 880 (1973).

The plaintiff's evidence that psychiatrists have recommended that he receive female hormones is cumulative of evidence presented in the Northern District case.  Thus, the plaintiff had previously alleged in the Northern District lawsuit that a psychiatrist, "Dr. Bell," had "strongly recommended" that he be placed on female hormones (Doc. 43-3, Ex. B, pp. 8, 18).  That contention was accepted as true in Magistrate Judge Timothy's report and recommendation, but, as Magistrate Judge Timothy explained, such evidence did not create a cognizable claim because "[a] difference of opinion over matters of medical judgment does not give rise to a constitutional claim" (Doc. 43-4, Ex. C, pp. 1, 3, 6).  Thus, the additional physician recommendations are cumulative (and immaterial) evidence that do not preclude the application of collateral estoppel.

The plaintiff alleges further that this lawsuit includes copies of "new grievances ... seeking estrogen" that are critical to his allegations of deliberate indifference and fraud against defendant Dr. Do (Doc. 46, p. 6). The grievances do not show fraudulent conduct by Dr. Do.  Rather, they merely show that Dr. Do, like several prison physicians before him, denied the plaintiff's request for female hormones to treat his transsexualism (see

Doc. 1-2, Exs. H, I, J; Doc. 33-2, p. 2).   There is nothing about that circumstance that warrants the denial of collateral estoppel.   See Parklane Hosiery Co., Inc. v. Shore, supra (collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries'").

Moreover, the plaintiff's contention that Dr. Cherry engaged in fraudulent conduct to preclude him from obtaining adequate treatment (Doc. 46) is baseless.  The plaintiff argues that Dr. Cherry stated fraudulently that the plaintiff had not been on female hormones for eighteen months prior to his incarceration with the FDOC in April 2003 (see Doc. 1-2, Ex. F).  While Dr. Cherry's statement is incorrect, as the plaintiff has presented records that he was on female hormones prior to entering the FDOC in April 2003 (see id. at Ex. G), Dr. Cherry's misstatement clearly does not rise to the level of fraud.

Further, this allegation regarding the use of female hormones at the time of incarceration does not distinguish this case from the Northern District lawsuit.  The Northern District court accepted as true the plaintiff's contention that he was on female hormones prior to his incarceration with the FDOC (Doc. 43-4, Ex. C, pp. 1, 2, 7, 9).  Nevertheless, it did not find that this

circumstance entitled the plaintiff under the Constitution to female hormones in prison.

In sum, all of the elements of collateral estoppel are satisfied and the plaintiff's challenges to the application of collateral estoppel lack merit. Accordingly, the plaintiff is precluded from rearguing his claim that the prison's refusal to prescribe him female hormones for transsexualism is a constitutional violation because the claim was previously resolved against him in the Northern District lawsuit.[9]

IV.

A. The defendants alternatively argue that they are entitled to summary judgment on the merits of the plaintiff's claim because the plaintiff has failed to show an Eighth Amendment violation. This argument also would warrant dismissal of the plaintiff's claim.

---

[9]The defendants have also alleged that the state court lawsuit precludes the plaintiff's claim. In the state court lawsuit, the plaintiff filed a Petition for a Writ of Mandamus which sought an order directing defendants FDOC and Dr. John Cinugu to prescribe him female hormones for transsexualism. Although the claim is identical, there is a lack of mutuality of parties, which is a required element for res judicata and collateral estoppel under Florida law, Quinn v. Monroe Co., 330 F.3d 1320, 1330 (11th Cir. 2003); E.C. v. Katz, 731 So.2d 1268 (Fla. 1999), and Florida law determines the preclusive effect of a state court judgment. Migra v. Warren City School Dist. Bd. of Educ., supra. 465 U.S. at 81.

"Federal and state governments...have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." <u>Harris</u> v. <u>Thigpen</u>, 941 F.2d 1495, 1504 (11th Cir. 1991). However, not every claim by a prisoner that he has received inadequate medical treatment states an Eighth Amendment violation. <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97, 105 (1976). Rather, a plaintiff must show that a prison official was deliberately indifferent to a substantial risk of serious harm to an inmate. <u>Id</u>. at 104; <u>Farmer</u> v. <u>Brennan</u>, <u>supra</u>, 511 U.S. at 828. This deliberate indifference standard applies to an inmate's psychiatric or mental health needs. <u>Harris</u> v. <u>Thigpen</u>, <u>supra</u>, 941 F.2d at 1505.

In this regard, the Eleventh Circuit explained (<u>id</u>.) (citations and quotations omitted):

> Medical treatment violates the eighth amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's ... course of treatment support a claim of cruel and unusual punishment.

In short, "it is not constitutionally required that [medical care] be perfect, the best obtainable, or even very good," id. (quotations and citation omitted), and when "the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (citation omitted), cert. denied, 475 U.S. 1096 (1986).

The analysis of the plaintiff's Eighth Amendment claim comprises an objective and a subjective inquiry: First, a plaintiff must set forth evidence of an objectively serious medical need, and second, a plaintiff must prove that the prison official acted with an attitude of deliberate indifference to that need. Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005). A serious medical need is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1284 n. 3.

It is undisputed that the plaintiff has been diagnosed as a transsexual. Transsexualism, which recently has been referred to as gender

identity disorder, is characterized as a major mental disorder in the <u>Diagnostic</u> <u>and Statistical Manual of Mental Disorders</u>, (4th ed., text rev.), p. 582. Further, several appellate courts have held that transsexualism constitutes a serious medical need. <u>See</u>, <u>e.g.</u>, <u>Maggert</u> v. <u>Hanks</u>, 131 F.3d 670, 671 (7th Cir. 1997); <u>White</u> v. <u>Farrier</u>, 849 F.2d 322, 325 (8th Cir. 1988). Therefore, it is appropriate to assume for the purposes of this motion that the plaintiff's transsexualism is a serious medical need.

Once a serious medical need is shown, a plaintiff must satisfy the subjective component by showing that the prison official acted with deliberate indifference to the plaintiff's serious medical need. <u>Bozeman</u> v. <u>Orum</u>, 422 F.3d 1265, 1272 (11th Cir. 2005). To establish that a prison official acted with deliberate indifference, the prisoner must prove the official: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) exhibited conduct that is more than gross negligence. <u>Id</u>. Thus, the response by the defendant to the inmate's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in ...

treatment, or even medical malpractice under state law." <u>Salas</u> v. <u>Tillman</u>,
2006 WL 122426 at *3  (11th Cir. 2006)(unpub. dec.)(quotations omitted).

       The plaintiff has not shown that the defendants were
deliberately indifferent to his medical needs because the defendants did not
disregard a risk of serious harm to the plaintiff.  Thus, Drs. Do and Roberts
aver that the plaintiff has been receiving on a regular basis mental health
counseling for transsexualism from the time he entered the Department of
Corrections (Doc. 43-15, Ex. N, ¶10; Doc. 43-16, Ex. O, ¶¶ 6-8).  Therefore,
the plaintiff's medical needs clearly have not been disregarded.

       Furthermore, the plaintiff has not shown that the treatment is so
inadequate that there is a risk of serious harm to him.  In this connection, Dr.
Roberts opines that this counseling is adequate to address the plaintiff's
mental health needs (Doc. 43-16, Ex. O,  ¶12).  Thus, Dr. Roberts, after
conducting a psychiatric evaluation of the plaintiff, stated that his "mental
status and adaptive functioning appears to be adequate in his present
environment with his current mental health treatment plan" (<u>id</u>. at ¶9).  In
particular, Drs. Roberts and Do have noted that the plaintiff's health records
"do[] not show any attempts at suicide, castration, or other self mutilation

since his most recent incarceration with the Department of Corrections"
commencing on April 2, 2003 (id. at ¶10;  Doc. 43-15, Ex. N, ¶ 8).

Dr. Do additionally states that the physical effects of exogenous
estrogen or other female hormones do not reside in the body for years and,
therefore, "it is unreasonable to believe that inmate Barnhill is currently
suffering any physical withdrawal symptoms as a result of his not being
prescribed female hormones" (Doc. 43-15, Ex. N, ¶6). Furthermore, Dr. Do
states that no surgery was necessary as a result of the withdrawal of hormones
(id. at ¶7). Significantly, the plaintiff has not presented any contravening
evidence from a medical doctor that the defendants' refusal to prescribe him
female hormones poses a serious risk of harm to him.

Therefore, the plaintiff has not met his burden of showing that
the defendants' response to his medical needs has been so poor as to
constitute an unnecessary and wanton infliction of pain. See Salas v.
Tillman, supra. Concomitantly, the defendants' refusal to provide the
plaintiff with estrogen, which is merely his preferred mode of treatment, does
not evidence deliberate indifference to his medical needs.

This conclusion is in accord with the majority of appellate courts to consider this issue. Thus, although there is no binding authority on this issue, several appellate courts have stated that the denial of female hormones to treat an inmate's transsexualism is not deliberate indifference to his medical needs. Meriwether v. Faulkner, 821 F.2d 408, 413 (7th Cir. 1987); Long v. Nix, 86 F.3d 761, 765-66 (8th Cir. 1996); Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986); see also Murray v. U.S. Bureau of Prisons, 1997 WL 34677 at *4 (6th Cir. 1997)(unpub. dec.); contra South v. Gomez, 2000 WL 222611 (9th Cir. 2000)(unpub. dec.).[10] These courts reason that, if the inmate is being provided some form of treatment deemed adequate by a physician, federal courts should defer to the informed judgment of the prison

---

[10]In opposition to the defendants' summary judgment motion, the plaintiff has cited to several cases, none of which is controlling, or persuasive. In particular, the plaintiff repeatedly cites Phillips v. Michigan Dep't of Corrections, 731 F. Supp. 792, 800 (W.D. Mich. 1990) and South v. Gomez, supra, 2000 WL 222611 (Doc. 46, pp. 5, 7, 12).

The court in Phillips v. Michigan Dep't of Corrections granted the plaintiff's motion for an injunction ordering the defendants to provide the plaintiff with estrogen for transsexualism. That case, however, is inapposite because, among other differences, the "defendant ha[d] failed to provide plaintiff with treatment of any kind." 731 F.Supp. at 800.

The Ninth Circuit's case of South v. Gomez is factually inapposite and unpersuasive. In South, the Ninth Circuit found, under "the particular facts of [that] case," that abruptly terminating hormone therapy in the absence of "any considered medical judgment" can constitute deliberate indifference to the plaintiff's medical needs. 2000 WL 222611 at *2. Unlike South, the plaintiff in this case has had several medical professionals consider his request for female hormones.

officials. See, e.g., Meriwether v. Faulkner, supra, 821 F.2d at 413; Long v.

Nix, supra, 86 F.3d at 765; Supre v. Ricketts, supra, 792 F.2d at 963.

Deference to the informed judgment of the prison officials is

especially appropriate here, since there is disagreement among experts

regarding the proper treatment for transsexualism, and female hormone

therapy is highly controversial due to its health risks. See Meriwether v.

Faulkner, supra, 821 F.2d at 413-14 (estrogen is a controversial form of

therapy); Supre v. Ricketts, supra, 792 F.2d at 960 (accepting medical

doctor's testimony that there are dangers attendant to estrogen treatment);

Scribner v. Surapaneni, 2006 WL 3761976 at *2 (E.D. Tex. 2006) (noting

evidence that extended hormone therapy "significantly increases the risk for

breast cancer, deep venous thrombosis, pulmonary emboli, stroke and heart

disease in both men and women").

The plaintiff argues that he has stated a cognizable constitutional

claim because two physicians have recommended that he receive female

hormones for transsexualism (Doc. 46, p. 13). The recommendations, one of

which states that female hormones "would be beneficial," and the other which

opines that female hormones are "recommended for psychological stress"

(Doc. 46-2, p. 2), do not establish that female hormone therapy is a medically necessary treatment for transsexualism, and clearly do not show that the withholding of such treatment constitutes cruel and unusual punishment.

Furthermore, when these lukewarm recommendations are juxtaposed with the opinions of Drs. Roberts and Do, it is clear that the plaintiff has not stated a constitutional claim. Thus, at best, the evidence shows that physicians disagree on the treatment for the plaintiff's transsexualism, and "it is well established that a simple difference in medical opinion does not constitute deliberate indifference." Bismark v. Fisher, 2007 WL 81754 at *4 (11th Cir. 2007)(unpub. dec) (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)(quotations omitted)); Grimsley v. Hammack, 2007 WL 4165927 at *2 (11th Cir. 2007)(unpub. dec.); see, e.g., Supre v. Ricketts, supra, 792 F.2d at 963 (rejection of female hormones for a transsexual does not state an Eighth Amendment claim even though two examining physicians recommended hormones). In other words, when the medical community cannot agree on the appropriate treatment, a legal basis is lacking for finding the medical care "so grossly incompetent, inadequate,

or excessive as to shock the conscience or to be intolerable to fundamental

fairness." Harris v. Thigpen, supra, 941 F.2d at 1505.

The plaintiff has also alleged that the defendants engaged in

fraudulent activity which demonstrates deliberate indifference to his medical

needs. As indicated, the plaintiff alleges that, in an effort to prevent him from

obtaining estrogen treatment, Dr. Cherry "lied" when stating that the plaintiff

had not been on estrogen therapy for eighteen months prior to his FDOC

incarceration (Doc. 1, pp. 13-14).[11]

Dr. Cherry's statement that the plaintiff did not enter the FDOC

on hormones is incorrect, since prior to the plaintiff's incarceration with the

FDOC, he was receiving hormones at the county jail (Doc. 1-2, Ex. G).

However, this merely establishes that Dr. Cherry made a mistake, probably

because the medical records he was given were incomplete. It does not

evidence "fraud" or that Dr. Cherry was deliberately indifferent to the

---

[11]Specifically, Dr. Cherry's correspondence dated May 16, 2006, states, in pertinent part (Doc. 32, p. 7, Ex. AA):

> You did not enter the Florida Department of Corrections on female hormones. Therefore, we have provided you with mental health support in order to deal with any adjustment problems that have occurred. Review of your record indicates that mental health services have been provided.

plaintiff's medical needs. <u>See</u> <u>Adams</u> v. <u>Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995)("It is obduracy and wantonness, not inadvertence or error in good faith that violates the Eighth Amendment"); <u>see</u>, <u>e.g.</u>, <u>Murray</u> v. <u>U.S. Bureau of Prisons</u>, <u>supra</u>, 1997 WL 34677 at *3 (physician did not violate the plaintiff's constitutional rights when he mistakenly prescribed a lower dosage of female hormones than prescribed prior to the plaintiff's incarceration and then refused to increase the dosage after he was informed of the error).

The plaintiff also alleges that Dr. Do "perpetrated" a "fraud" by denying the "Plaintiff medical care based on a 'policy that prohibits such care, not sound medical judgment'" (Doc. 46, p. 6). This argument is meritless. The plaintiff is receiving treatment in the form of mental health counseling, which physicians have determined to be appropriate based upon individualized medical evaluations of the plaintiff.[12]

---

[12]The plaintiff's argument in this regard focuses on Dr. Do's statement that "[i]t has been a long standing policy of the Department of Corrections that inmates will not be given Estrogen for the purpose of <u>gender re-assignment</u>" (Doc. 1-2, Ex. H)(emphasis added). There is nothing fraudulent, or even questionable, about this statement. Thus, as Judge Posner succinctly explained in <u>Maggert</u> v. <u>Hanks</u>, <u>supra</u>, 131 F.3d at 671 "[a] prison is not required by the Eighth Amendment to give a prisoner medical care that is as good as he would receive if he were a free person, let alone an affluent free person." It is further noted that Dr. Do subsequently clarified that the provision of estrogen for medical purposes is considered on a "case by case" basis (Doc. 1-2, Ex. J, p. 21).

Finally, the plaintiff argues that the defendants failed to comply with a purported DOC policy that hormone therapy should be continued if the prisoner was on such therapy when first incarcerated (id. at p. 5). The plaintiff has not provided the court with this policy and, therefore, this argument in response to a summary judgment motion should be rejected as unsupported. See Rule 56(e)(2) (in response to a summary judgment motion a party may not rely merely on unsupported allegations). Furthermore, "this observation, even if true, misses the point .... [because] failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

In sum, the plaintiff has not created a genuine issue of material fact regarding his claim that the defendants violated the Eighth Amendment to the Constitution by refusing to prescribe him female hormones for transsexualism. The plaintiff is receiving mental health treatment for transsexualism and he has not shown that this treatment is so grossly incompetent or inadequate as to shock the conscience or to be intolerable to

fundamental fairness.   Accordingly, the plaintiff's lawsuit should be dismissed.

B.   The defendants have also argued that "[d]ismissal with prejudice is proper based on Qualified Immunity" (Doc. 43, p. 14). The defense of qualified immunity applies to damages actions, but not to injunctive relief. See, e.g., Wood v. Strickland, 420 U.S. 308, 314 n. 6 (1975). In this case, qualified immunity provides a basis for dismissing the plaintiff's claim for money damages.

The defense of qualified immunity requires courts to enter judgment in favor of a government employee acting within his discretionary authority unless the employee's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The decision whether to prescribe estrogen for the plaintiff's disorder unquestionably satisfies the defendants' requirement to show that they were acting in the exercise of discretionary authority.

The issue then becomes whether the defendants violated the plaintiff's Eighth Amendment right, and if so, whether that right was clearly

established in these circumstances.  <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 201 (2001).  As already explained, the discontinuation of the plaintiff's hormone therapy is not a constitutional violation.  Therefore, the plaintiff's claim fails at the first step of the inquiry.

Further, even assuming that the defendants' conduct is a constitutional violation, they are entitled to qualified immunity because their decisions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow</u> v. <u>Fitzgerald</u>, <u>supra</u>, 457 U.S. at 818.  Thus, for the law to be established to the point that qualified immunity does not apply, the law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right."  <u>Hope</u> v. <u>Pelzer</u>, 536 U.S. 730, 739 (2002).  Moreover, the pertinent law guiding the government actor must be found in the decisions of the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court. <u>Evans</u> v. <u>Stephens</u>,  407 F.3d 1272, 1283 n.14 (11th Cir. 2005).

The plaintiff has not cited, and the court has not found, any controlling authority that makes it apparent that, instead of mental health counseling, the Constitution requires the administration of female hormones

-39-

for a transsexual inmate who was receiving such hormones prior to his incarceration. The plaintiff's citation to a handful of non-controlling and distinguishable cases does not meet this requirement. Therefore, the defendants are entitled to qualified immunity with respect to the plaintiff's damage claim.

The defense of qualified immunity, as previously explained, does not apply to the plaintiff's claim for injunctive relief. However, that claim seems groundless since it does not appear that the two defendants are in a position to provide the relief sought by an injunction. Thus, Dr. Cherry is the chief health officer for *another* prison in a different region of the FDOC and, therefore, he ostensibly has no present role in the plaintiff's care. Further, although Dr. Do is the chief health officer for the prison in which the plaintiff is housed, Dr. Do's statement that a "recommendation by the Psychiatrist for hormone treatment was elevated to Office of Health Services in Region 3 and Tallahassee on August 25, 2006, and the recommendation for hormone therapy was not approved" (Doc. 33-2, p. 2) indicates that Dr. Do also lacks authority to implement the plaintiff's request.

V.

The defendants' final argument is that the plaintiff's request to wear cosmetics and grow his hair like women prisoners should be dismissed for failure to exhaust administrative remedies. This argument was not answered by the plaintiff in his response to the motion for summary judgment. For this reason, and because of a lack of exhaustion, the claim should be dismissed.

The Prison Litigation Reform Act, as amended, contains a variety of provisions to bring under control the sharp rise in prisoner litigation in federal courts. Woodford v. Ngo, 548 U.S. 81 (2006). A pivotal aspect of this legislation is a mandatory exhaustion provision, id., which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a).

Florida has a grievance system for prisoners to challenge the conditions of confinement. See Rules 33-103.005-007, Fla. Admin. Code. The defendants contend that the plaintiff did not exhaust administrative

remedies regarding his request to be governed by female inmate rules for wearing cosmetics and hair growth. The "[p]laintiff concedes that []he has not exhausted such remedies in compliance with PLRA rules" (Doc. 32, p. 4). Accordingly, the defendants are entitled to summary judgment on this claim for failure to exhaust administrative remedies.

VI.

In sum, the defendants are entitled to summary judgment on the ground of collateral estoppel because the plaintiff has already unsuccessfully litigated in the Northern District of Florida the claim asserted in this lawsuit. Moreover, the defendants are entitled to summary judgment on the merits of the plaintiff's claim that the prison's refusal to prescribe him female hormones for transsexualism violates the Eighth Amendment. Furthermore, the defendants have successfully asserted the qualified immunity defense, which protects them from monetary damages. Finally, as the plaintiff concedes, his request for permission to wear cosmetics and grow his hair as a female inmate is not ripe because he did not exhaust his administrative remedies.

For these reasons, I recommend that the plaintiff's complaint be dismissed with prejudice, except as to the claim regarding wearing cosmetics and hair length, which should be dismissed without prejudice.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY 28, 2008

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).

-43-